IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

        Plaintiff,                    Criminal No. 25-0197
                                         ELECTRONICALLY FILED

    v.

BRUCE LINDSEY,

        Defendant.

**MEMORANDUM OPINION AND ORDER RE DEFENDANT BRUCE LINDSEY'S MOTION TO SUPPRESS EVIDENCE (Doc. 35), MOTION FOR *FRANKS* HEARING (Doc. 37) AND MOTION TO COMPEL IDENTITY OF CONFIDENTIAL INFORMANT (Doc. 38)**

Pending are three (3) related pretrial motions filed by Defendant Bruce Lindsey:

(1) Defendant's Motion to Suppress Evidence (Doc. 35); (2) Defendant's Motion for *Franks*

Hearing (Doc. 37); and (3) Defendant's Motion to Compel Identity of Confidential Informant

(Doc. 38).

## I.      BACKGROUND

On July 22, 2025, Defendant was charged in a 3-count Indictment with: (1) possession

with intent to distribute a quantity of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and

841(b)(1)(C) (Count 1); (2) possession of a firearm in furtherance of a drug trafficking crime, in

violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 2); and (3) possession of a firearm after a felony

conviction, in violation of 18 U.S.C. § 922(g)(1) (Count 3).　(Doc. 3).

On July 29, 2025, Defendant pleaded not guilty to all charges in the Indictment.

(Doc. 13).

On January 12, 2026, Defendant filed the three (3) pending pretrial Motions.

(Doc. 35, Doc. 37, Doc. 38).

On February 1, 2026, the Government filed an omnibus Response, opposing all three (3) of Defendant's pretrial Motions.  (Doc. 41).

Accordingly, Defendant's Motion to Suppress Evidence (Doc. 35), Motion for *Franks* Hearing (Doc. 37), and Motion to Compel Identity of Confidential Informant (Doc. 38) have been fully briefed and are ripe for adjudication.

## II.    DEFENDANT'S MOTION FOR *FRANKS* HEARING (Doc. 37) IS DENIED

On March 20, 2025, pursuant to a search warrant, law enforcement searched Defendant's residence at 814 Edgewood Drive, Sharon, Pennsylvania ("Defendant's Residence") and seized numerous items, including crack cocaine and a firearm.  The search warrant for Defendant's Residence was issued pursuant to a search warrant application which included the Affidavit in Support of Application of Officer Marc Frampton ("Officer Frampton's Affidavit"). (Doc. 36-1).  Officer Frampton is a police officer with the City of Hermitage Police Department in Hermitage, Mercer County, Pennsylvania, who, at the time of the Affidavit, was assigned to the Mercer County Drug Task Force ("MCDTF").  (*Id.*).

### A.  *Defendant's Position*

Defendant contends that he is entitled to a *Franks* Hearing in this case because he has sufficiently established that Officer Frampton's Affidavit contained the following false statements or omissions, made knowingly and intentionally, or with a reckless disregard for the truth. (Doc. 36 at 4).  (*See also id.* at 5) ("The evidence in this case makes clear that the affidavit of probable cause contains materially false information that was intended to mislead the state court judge that probable cause existed to justify a search warrant for Mr. Lindsey's residence."  (*Id.* at 1).

First, Defendant argues that he is entitled to a *Franks* hearing because the statement is Officer Frampton's Affidavit that the investigation of Defendant for drug trafficking (crack cocaine and fentanyl) in Mercer County had "occurred within the last thirty (30) days of this date [March 19, 2025]," intentionally created the false impression that Defendant had been being investigated for drug trafficking for weeks, as opposed to a period of a few days/three (3) days. (Doc. 36 at 5-6). As evidence to support this assertion, Defendant cites to two (2) lab reports, one (1) report dated May 14, 2025 and one (1) report dated July 29, 2025, attached to Defendant's Memorandum in Support of Motion to Suppress Evidence ("Defendant's Supporting Brief"), which support that the two controlled buys occurred on March 16, 2025 and March 17, 2025. (Doc. 36-2 at 1-2).

Second, Defendant posits that he is entitled to a *Franks* hearing because the statement in Officer Frampton's Affidavit that the first alleged transaction occurred during the week of March 16, 2025, was an intentional misuse of facts by Officer Frampton "to make the investigation into Mr. Lindsey appear longer and more comprehensive than it actually was." (Doc. 36 at 6). As evidence to support this assertion, Defendant cites to the July 29, 2025 lab report attached to Defendant's Supporting Brief which supports that the first of the two controlled buys occurred on March 16, 2025. (Doc. 36-2 at 1).

Third, Defendant contends that he is entitled to a *Franks* hearing because the Confidential Informant ("CI") referenced in Officer Frampton's Affidavit does not exist, and therefore, all statements in Officer Frampton's Affidavit attributed to the CI are false statements by Officer Frampton, made knowingly and intentionally. (Doc. 36 at 6). As evidence to support this assertion, Defendant cites to the following documents which Defendant contends are "the type of evidence typically produced during controlled purchases of drugs," but that "does not exist in

this case:" (1) the lack of phone records on March 16, 2025 and March 17, 2025, from the CI to the Defendant to support statements in Officer Frampton's Affidavit that the CI called Defendant on those dates to set up the controlled drug purchases; (2) the lack of surveillance photographs or video recordings of the March 16, 2025, and March 17, 2025, controlled buys to support statements in Officer Frampton's Affidavit that law enforcement conducted surveillance of both controlled drug buys; and (3) the lack of photographs of the official advanced funds ("OA funds") to support statements in Officer Frampton's Affidavit that the CI was provided OA funds to make the controlled drug purchases from Defendant.  Defendant also argues that Officer Frampton's Affidavit lacks "the details of the alleged transaction between the CI and Mr. Lindsey," including that "[t]he affidavit does not indicate the amount of funds supplied to the CI," and "how much the CI agreed to purchase or the price of the items to be purchased," and the lack of this information in Officer Frampton's Affidavit "detract[s] from the legitimacy or the existence of the CI . . . ."  (*Id*. at 10).

Fourth, Defendant argues that he is entitled to a *Franks* hearing because if the CI exists, any statements by the CI that Defendant "was ever associated with fentanyl is untruthful."  (*Id.* at 6).  In support, Defendant cites to: (1) the two lab reports attached to Defendant's Supporting Brief, dated May 14, 2025 and July 29, 2025, that indicate that the tested substances were bromazolam and crack cocaine, and not fentanyl; (2) the prosecution's failure to initially produce to Defendant "lab reports regarding the 'suspected fentanyl' purchased during the alleged controlled purchases; " and (3) Officer Frampton's Affidavit lacking "the details of the alleged transaction between the CI and Mr. Lindsey," including that "[t]he affidavit does not indicate the amount of funds supplied to the CI," and "how much the CI agreed to purchase or the price of the items to be purchased."  (*Id*.   at 6-7, 10).

Fifth, Defendant argues that he is entitled to a *Franks* hearing because in his Affidavit Officer Frampton intentionally or recklessly represented that Defendant sold fentanyl.  (*Id.* at 8-9).  In support thereof, Defendant references the two lab reports attached to Defendant's Supporting Brief, dated May 14, 2025 and July 29, 2025, that indicate that the tested substances were bromazolam and crack cocaine, and not fentanyl.  (*Id.*)

Sixth, Defendant asserts that he is entitled to a *Franks* hearing because Officer Frampton's Affidavit either omitted that the suspected fentanyl was field tested, and was found not to be fentanyl or alternatively, omitted that the suspected fentanyl was not field tested: "This is important because, if the suspected fentanyl was not field tested, the misrepresentations in the affidavit that the substance was suspected fentanyl were recklessly made. On the other hand, if the suspected fentanyl was field tested and that test was negative, Officer Frampton's assertions in the affidavit were intentionally false."  (*Id.* at 8).

Seventh, Defendant contends that he is entitled to a *Franks* hearing because Officer Frampton's Affidavit lacks "the details of the alleged transaction between the CI and Mr. Lindsey," including that "[t]he affidavit does not indicate the amount of funds supplied to the CI," and "how much the CI agreed to purchase or the price of the items to be purchased," and the lack of this information in Officer Frampton's Affidavit "detract[s] from  . . . the integrity of the affidavit of probable cause."  (*Id.* at 10).

### B.   The Government's Position

In response, the Government first contends that Defendant is not entitled to a *Franks* hearing with respect to any of the claimed misrepresentations in, and omissions from, Officer Frampton's Affidavit because Defendant "has not made a substantial preliminary showing of (1) a false statement that was knowingly and intentionally, or with reckless disregard for the

truth, included in the search warrant affidavit (2) that was necessary to the finding of probable cause," emphasizing that such a substantial preliminary showing "must be made, through affidavits or sworn or otherwise reliable statements of witnesses." (Doc. 41 at 19).

The Government then addresses the specific arguments contained in Defendant's Motion for a *Franks* Hearing, beginning with Defendant's related assertions that: (1) Officer Frampton's Affidavit intentionally or recklessly misrepresents that Defendant possessed fentanyl and sold it to the CI because the CI did not exist and Defendant never possessed or sold fentanyl; and (2) the CI, if s/he exists, lied when s/he said Defendant possessed fentanyl:

> Mr. Lindsey claims that he never possessed or distributed fentanyl. Based on this self-serving premise, he argues that the information from the confidential informant on page 12 of the affidavit/Exhibit 1 – *i.e.,* that Mr. Lindsey was a crack cocaine and fentanyl supplier and that he previously was observed in possession of crack cocaine and fentanyl at his residence – is false. This information, if false at all, was only half false because the investigation confirmed the crack cocaine half of it as true. The accuracy, and significance, of the crack cocaine half makes any inaccuracy regarding fentanyl immaterial and, thus, insufficient under *Franks*. Moreover, as explained above, the focus under *Franks* is the veracity of the affiant, not of an informant.

> Mr. Lindsey bases his challenge to the veracity of the affiant – *i.e*., Officer Frampton – on the premise that Officer Frampton falsely stated to the issuing judge that fentanyl, and not bromazolam, was purchased from Mr. Lindsey. Officer Frampton did not know that the pills contained bromazolam, and not fentanyl, until the lab report was produced long after the search warrant was served. In light of the nature of the investigation and the prevalence of fentanyl in pills sold in the surreptitious manner that Mr. Lindsey sold them, it was reasonable for Officer Frampton to believe the pills contained fentanyl. As explained above, statements that an affiant reasonably believes to be true are not false statements under *Franks* and statements of opinion are also not false statements under *Franks.*

> In any event, Officer Frampton did not falsely state to the issuing judge that fentanyl, and not bromazolam, was confirmed to have been purchased from Mr. Lindsey. On page 13 of Exhibit 1/the affidavit, after referring to fentanyl and crack cocaine, he informed the judge that "the suspected narcotics will be submitted to the Pennsylvania State Police Crime Lab for further analysis." On page 15, he informed the judge that, after the first controlled buy, the informant "relinquished a clear plastic baggie containing suspected Fentanyl." And on page 16, he informed the judge that, after the second controlled buy, the informant "relinquished two

clear plastic baggies with one containing suspected Crack Cocaine and the other containing suspected Fentanyl."

No *Franks* hearing would be justified even if Officer Frampton had falsely stated that the buys were confirmed to involve fentanyl and not bromazolam. That statement would not have been material because the remedial analysis would be to replace the fentanyl references with bromazolam references and determine if doing so negated probable cause. As explained above, as of March 2025 there was at least probable cause to conclude that bromazolam distribution was a violation of federal analogue law – 21 U.S.C. § 813 – and/or a violation of Pennsylvania state designer drug law – 35 P.S. § 780-113(a)(36). Moreover, also as explained above, Mr. Lindsey's surreptitious bromazolam dealing did not negate the probable cause produced by his crack dealing that was sufficient by itself to support the search warrant.

(*Id*. at 20-21).

Second, the Government addresses Defendant's contention that he is entitled to a *Franks* hearing because: (1) the task force officers did not field test the suspected fentanyl pills; (2) the task force officers did not videorecord or photograph the controlled buys; (3) Officer Frampton's Affidavit did "not specify the exact dates of the controlled buys and the exact amounts of drugs purchased and cash exchanged," arguing both that this conduct by law enforcement was not odd (individually or collectively), and "[e]ven if they were odd, they would not justify a *Franks* hearing."  (*Id*. at 21-22).

Third, the Government asserts, in response to Defendant's arguments that a *Franks* hearing is necessary because Officer Frampton's Affidavit: (1) stated the investigation of Defendant for drug trafficking had "occurred within the past thirty (30) days," when, in fact, the duration of the investigation of Defendant for drug trafficking only lasted a few days/three (3) days; (2) did not include the exact dates of the two (2) controlled buys; and (3) did not provide the exact amounts of drugs purchased and cash exchanged, that: (a) the lack of specificity was done (and commonly is done) to protect the identity of the CI; (b) Officer Frampton's Affidavit "stated sufficient probable cause without the inclusion of specific details that would have

potentially endangered the informant;" (c) "under *Franks*, ambiguity is not falsity;" and (d) any ambiguity in Officer Frampton's Affidavit with respect to these facts "are not material, individually or collectively, in light of the other probable cause information in the affidavit." (*Id.* at 23).

C.  *Applicable Law*

In *Franks v. Delaware*, 438 U.S. 154 (1978), the United States Supreme Court held that "the Fourth Amendment requires that a hearing be held at the defendant's request" where the defendant has made "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks,* 438 U.S. at 155-56. *See also U.S. v. Boyle*, 849 F. App'x 325, 329-330 (3d Cir. Mar. 9, 2021) (stating: "The right to a *Franks* hearing is not absolute. Instead, the defendant must (1) make a 'substantial preliminary showing' that the affiant knowingly or recklessly included a false statement in or omitted facts from the affidavit, and (2) show that the false statement or omitted facts are 'material to the finding of probable cause'.") (quoting *U.S. v. Yusuf*, 461 F.3d 374, 383–84 (3d Cir. 2006)).

The *Franks* Court further determined:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Franks,* 438 U.S. at 171.

Additionally, in *United States v. Yusuf*, 461 F.3d 374 (3d Cir. 2006), the United States

Court of Appeals for the Third Circuit explained:

> The Supreme Court in "*Franks* gave no guidance concerning what constitutes a reckless disregard for the truth in fourth amendment cases, except to state that 'negligence or innocent mistake [is] insufficient.'" *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000) (quoting *United States v. Davis*, 617 F.2d 677, 694 (D.C. Cir. 1979)). In *Wilson*, we set forth standards to identify what constitutes "reckless disregard for the truth" regarding both misstatements and omissions:
>
>> In evaluating a claim that an officer both asserted and omitted facts with reckless disregard for the truth, we hold that: (1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would want to know; and (2) assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting.
>
> *Id.* at 783. The latter standard is similar to the actual malice standard set forth in First Amendment defamation claims. *Id.* at 788.

*Yusuf*, 461 F.3d at 383.

Finally, it is well established that "[p]robable cause exists when 'there is a fair probability

that contraband or evidence of a crime will be found in a particular place'." *U.S. v. Grubbs*, 547

U.S. 90, 95 (2006) (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983)). Ultimately, then "there

must be 'a sufficient nexus between the contraband [or evidence] to be seized and the place to be

searched'." *U.S. v. Torres*, No. 22-2108, 2023 WL 332758, at *1 (3d Cir. Jan. 20, 2023)

(quoting *U.S. v. Golson*, 743 F.3d 44, 54 (3d Cir. 2014)).

### D. Discussion

Having reviewed Defendant's asserted misrepresentations and omissions detailed above,

the Court finds, with respect to all these alleged misrepresentations and omissions, that

Defendant has not made the requisite substantial preliminary showing that Officer Frampton

knowingly and intentionally, or with reckless disregard for the truth, included a false statement in

his Affidavit, or omitted information from his Affidavit, knowingly and intentionally or with

reckless disregard for the truth.  While Defendant has made "allegations of deliberate falsehood or of reckless disregard for the truth," Defendant has neither: (1) "accompanied [these allegations with] an offer of proof" in the form of "affidavits or sworn or otherwise reliable statements of witnesses" or any other evidence, that makes the requisite preliminary showing that Officer Frampton knowingly and intentionally, or with reckless disregard for the truth, included a false statement in his Affidavit, or omitted information from his Affidavit, knowingly and intentionally or with reckless disregard for the truth; nor (2) otherwise satisfactorily explained the absence of such offers of proof.

More specifically, the Court finds that the evidence submitted by Defendant: (1) the lab reports dated May 14, 2025 and July 29, 2025 that support that Defendant sold the CI bromazolam on March 16, 2025 and March 17, 2025, and not fentanyl; (2) the lack of phone records of the CI's calls to Defendant on March 16, 2025 and March 17, 2025 to set up the controlled drug buys; (3) the lack of surveillance videos or photographs of the two (2) controlled drug buys on March 16, 2025 and March 17, 2025; (4) the lack of photographs of the OA funds provided to the CI on March 16, 2025 and March 17, 2025, to make the controlled drug purchases; (5) Officer Frampton's Affidavit failure to include "details of the alleged transaction between the CI and Mr. Lindsey" such as the amount of OA funds supplied to the CI and "how much the CI agreed to purchase or the price of the items to be purchased," do not, individually or collectively, satisfy the requisite substantial preliminary showing that Officer Frampton knowingly and intentionally, or with reckless disregard for the truth, included any false statements in his Affidavit, or omitted information from his Affidavit, knowingly and intentionally or with reckless disregard for the truth, as to any of Defendant's asserted misrepresentations and omissions detailed above.

In so holding, the Court emphasizes that Defendant's assertion that the CI does not exist and thus, all statements in Officer Frampton's Affidavit attributable to the CI are false statements which Officer Frampton knowingly and intentionally included in his Affidavit, is pure speculation and the evidence Defendant cites in support of this assertion does not, individually or collectively, satisfy the requisite substantial preliminary showing that the CI does not exist and thus, all statements in Officer Frampton's Affidavit attributed to the CI are false statements by Officer Frampton, knowingly and intentionally included in his Affidavit.

Further, to the extent that Defendant attacks the reliability of the CI as a basis for entitlement to a *Franks* hearing, assertions that attack the veracity of a confidential informant are not sufficient to warrant a *Franks* hearing. *See U.S. v. Rivera,* 524 F. App'x. 821, 826 (3d Cir. 2013) (quoting *U.S. v. Brown*, 3 F.3d 673, 677 (3d Cir.1993) (stating: "'It is well-established that a substantial showing of the informant's untruthfulness is not sufficient to warrant a Franks hearing'.").

Additionally, as explained later in this Memorandum Opinion and Order with respect to Defendant's Motion to Suppress, contrary to Defendant's assertion, the Court finds that based on the totality of the circumstances set forth in Officer Frampton's Affidavit, the veracity and basis of knowledge of the CI were sufficiently set out in Officer Frampton's Affidavit: the CI was known to Officer Frampton, had in the past assisted law enforcement in investigations that resulted in the seizure of controlled substances, firearms, and currency, and in prosecutions of criminal activity, and law enforcement's independent investigation and surveillance of the CI and Defendant during the two (2) controlled buys, corroborated the information the CI shared with law enforcement that was set forth in Officer Frampton's Affidavit.

Further, the Court finds that even without the CI's statements to law enforcement that: (1) Defendant was a supplier of fentanyl and crack cocaine in the Shenango Valley; (2) s/he had seen Defendant in possession of fentanyl and crack cocaine in Defendant's Residence; and (3) s/he had bought drugs from Defendant in the past in a similar fashion to how the two (2) controlled buys were conducted, the detailed facts asserted in Officer Frampton's Affidavit with respect to the two (2) controlled buys carried out by law enforcement on March 16, 2025 and March 17, 2025 established a substantial basis for the state court Judge to conclude that probable cause existed to search Defendant's Residence for the items listed in the issued search warrant, *i.e.*, these statements are not material to the finding of probable cause to search Defendant's Residence for the items listed in the issued search warrant.

The Court also disagrees with Defendant's arguments that Officer Frampton's Affidavit is misleading because the Affidavit indicates that (1) Officer Frampton had begun investigating Defendant "within 30 days of the filing of the affidavit," which while possibly "factually true []" creates the impression that an investigation into Mr. Lindsey lasted for a period longer than just a few days"/three (3) days and was more comprehensive that it actually was; and (2) the first alleged controlled buy of drugs from Defendant occurred during the week of March 16, 2025, "but it actually occurred on March 16, 2025."  ([Doc. 36 at 4-5](#)).

To the contrary, the Court first finds, as argued by the Government, that the specific date of the first controlled buy reasonably was not included in order to protected the identity of the CI.

Second, the Court finds that the omission from Officer Frampton's Affidavit of the March 16, 2025, date with respect to the first controlled drug buy is not a material omission, and the statement that the first controlled buy occurred during the week of March 16, 2025, is not a

material misrepresentation in that it did not create, as contended by Defendant, the false impression that the investigation of Defendant for drug trafficking lasted longer, and was more comprehensive.[1]

Third, viewing Officer Frampton's Affidavit in its entirety, the Court finds that it was not a misrepresentation, let alone a material misrepresentation, for Officer Frampton to state in his Affidavit that the investigation of Defendant for drug trafficking had begun "within the past thirty (30) days; contrary to Defendant's position, said statement did not create the false impression that the investigation of Defendant for drug trafficking lasted longer, and was more comprehensive, than it actually was.

The Court also disagrees with Defendant's assertion that Officer Frampton knowingly and intentionally, or with a reckless disregard for the truth, included in his Affidavit that Defendant sold fentanyl to the CI.

To the contrary, viewing Officer Frampton's Affidavit as a whole, the Affidavit plainly asserted that Defendant sold the CI *suspected* fentanyl on two (2) occasions, which would be (and was) "submitted to the Pennsylvania State Police Crime Lab for further analysis." (Doc. 36-1 at 16, 18-10).

Further, the Court finds that notwithstanding that months later, the suspected fentanyl sold to the CI by Defendant was determined to be bromazolam and not fentanyl, the statement in Officer Frampton's Affidavit, that Defendant sold the CI *suspected* fentanyl on two (2) occasions was a reasonable assertion, and does not entitle Defendant to a *Franks* hearing, given Officer

---

[1] Notably: (1) Officer Frampton's Affidavit was signed on Wednesday, March 19, 2025; (2) March 16, 2025, was a Sunday; and (3) Officer Frampton's Affidavit stated that the second controlled buy occurred within two (2) days of Officer Frampton's Affidavit being signed on March 19, 2025. Therefore, the state court Judge reviewing Officer Frampton's Affidavit would have inferred from these statements that the first controlled buy occurred on either March 16 or earlier in the day on March 17, 2025, than the second controlled purchase.

Frampton's explanation in his Affidavit that: (1) on March 16, 2025, the CI arranged to purchase fentanyl from Defendant, and subsequently, Defendant sold the CI a substance contained in a clear baggie; and (2) on March 17, 2025, the CI arranged to buy fentanyl and cocaine from Defendant, and subsequently, Defendant sold the CI substances in two clear baggies, one of which was field tested and tested presumptively positive for cocaine base.[2]

Further, the Court disagrees with Defendant's contention that Officer Frampton knowingly and intentionally, or with a reckless disregard for the truth, omitted from his Affidavit whether or not law enforcement field tested the suspected fentanyl.  Rather, the Court finds that the only reasonable inference from Officer Frampton's Affidavit, based on Officer Frampton's statement that the suspected crack cocaine was field tested, was that the suspected fentanyl was not field tested.  Therefore, there was no such material omission in Officer Frampton's Affidavit as to whether or not the suspected fentanyl was field tested.

The Court also disagrees with Defendant's contention that Officer Frampton's Affidavit omitted certain material "details of the alleged transaction between the CI and Mr. Lindsey," including that "[t]he affidavit does not indicate the amount of funds supplied to the CI" and "how much the CI agreed to purchase or the price of the items to be purchased."  To the contrary, the

---

[2] Given that the Court finds that Officer Frampton's Affidavit does not knowingly and intentionally, or with a reckless disregard for the truth, falsely state that Defendant sold fentanyl, it is unnecessary for the Court to address the following alternative arguments by the Government and it elects not to do so:

> No *Franks* hearing would be justified even if Officer Frampton had falsely stated that the buys were confirmed to involve fentanyl and not bromazolam. That statement would not have been material because the remedial analysis would be to replace the fentanyl references with bromazolam references and determine if doing so negated probable cause. As explained above, as of March 2025 there was at least probable cause to conclude that bromazolam distribution was a violation of federal analogue law – 21 U.S.C. § 813 – and/or a violation of Pennsylvania state designer drug law – 35 P.S. § 780-113(a)(36). Moreover, also as explained above, Mr. Lindsey's surreptitious bromazolam dealing did not negate the probable cause produced by his crack dealing that was sufficient by itself to support the search warrant.

(Doc. 41 at 21).

Court finds that any omission of these details of the controlled buys from Officer Frampton's Affidavit is not a material omission because the other information contained in Officer Frampton's Affidavit provided a substantial basis for the state court Judge to conclude that probable cause existed to search Defendant's Residence for the items listed in the issued search warrant.

Finally, the Court agrees with the Government's position that even if all references to Defendant possessing and selling fentanyl were omitted from Officer Frampton's Affidavit, based on the statements in Officer Frampton's Affidavit as to Defendant's possession and selling of .6 grams of crack cocaine to the CI on March 17, 2025, there was a substantial basis for the state court Judge to conclude that probable cause existed to search Defendant's Residence for the items listed in the search warrant issued for Defendant's Residence. *See* Doc 41 at 13 (Government arguing: Defendant's "crack dealing, that was confirmed by a controlled buy, was sufficient to produce probable cause for the search warrant as stated in the supporting affidavit. His residence was likely to contain, among other things, more controlled substances such as crack cocaine, drug-dealing proceeds, drug-dealing records, and drug-dealing paraphernalia (including cell phones).").

Thus, for all of these reasons, the Court concludes that Defendant has not established that he is entitled to a *Franks* Hearing based on any of the alleged misrepresentations in, or omissions from, Officer Frampton's Affidavit, and Defendant's Motion for a *Franks* Hearing is denied.

### III.    DEFENDANT'S MOTION TO COMPEL IDENTITY OF CONFIDENTIAL INFORMANT (Doc. 38) IS DENIED

Officer Frampton's Affidavit references the involvement of an unnamed, but not anonymous, confidential informant ("CI") as part of law enforcement's investigation of

Defendant for drug trafficking:

Your Affiant has been involved in a drug trafficking investigation involving LINDSEY JR. that has occurred within the past thirty (30) days of this date. This investigation involves trafficking of Crack Cocaine and Fentanyl in Mercer County, Pennsylvania.

In March of 2025, a Confidential Informant, hereinafter referred to as the "CI", advised that LINDSEY JR. is a source for Crack Cocaine and Fentanyl in the Shenango Valley area. The CI further advised that he/she has observed Crack Cocaine and Fentanyl, in the possession of LINDSEY JR. at 814 Edgewood Drive. The CI has been involved in previous drug investigations resulting in the seizure of controlled substances, currency, and firearms, as well as the prosecution of individuals at both the State and Federal Levels and has been proven a reliable source. All information gleaned from the CI has been corroborated by law enforcement through intelligence and physical surveillance.

The CI was shown an photograph of LINDSEY JR. with all identifying information removed and positively identified the photograph as LINDSEY JR. Information gained through this investigation, as well as surveillance, has determined that LINDSEY JR. is currently residing at 814 Edgewood Drive.

In March of 2025, the CI was utilized to make controlled purchases of Crack Cocaine and Fentanyl from LINDSEY JR. Each of these controlled purchases occurred under the direction and supervision of your Affiant. The suspected narcotics will be submitted to the Pennsylvania State Police Crime Lab for further analysis.

A controlled purchase is defined as a purchase of a controlled substance by a confidential informant who is acting at the request of law enforcement. The CI is searched prior to and after the transaction for controlled substances and/or contraband. If the CI's vehicle is used, it is searched for controlled substances and/or contraband as well. The CI is provided with official funds to purchase the controlled substance. Surveillance of the CI is maintained as is reasonably possible by law enforcement authorities. After the transaction, the CI returns to law enforcement authorities and turns over the purchased controlled substance. The aforementioned protocol was followed during all of the controlled purchases described herein.

During the week of March 16, 2025, on a date which is known to your Affiant, Agents/Officers met with the CI at a pre-determined location. The CI was briefed and searched; no money, drugs or weapons were found on the CI's person or in the CI's vehicle. The CI did confirm to Agents/Officers that he/she has purchased drugs from LINDSEY JR. in the past, in a similar fashion as will be described herein.

The CI contacted LINDSEY JR. via cellular telephone, at a number known to your Affiant and provided by the CI, to arrange to purchase an amount of Fentanyl. LINDSEY JR. agreed to meet the CI at (sic.) location in the City of Farrell known to your Affiant. Agents/Officers provided the CI with a known amount of official advanced funds (OAF) obtained from the Pennsylvania Office of Attorney General.

Officers/Agents departed the pre-determined location with the CI. The CI was followed to a location in the City of Farrell known to your Affiant where the CI was under constant surveillance. Officers/Agents were simultaneously conducting surveillance at LINDSEY JR.'s residence at 814 Edgewood Drive. A dark gray Jeep Grand Cherokee, bearing Pennsylvania registration MPC-9308, was parked in front of 814 Edgewood Drive and is known to be utilized by LINDSEY JR. Officers/Agents observed LINDSEY JR. exit the front door of 814 Edgewood Drive and get into the driver's seat of the Jeep Grand Cherokee. Officers/Agents followed LINDSEY JR. to the meeting location. LINDSEY JR. did not make any stops or meet with any other individuals while traveling to the meet location. The CI was then observed meeting with LINDSEY JR. Following the brief meeting, the CI was then followed directly back to the pre-determined location, never meeting with any other individuals, where the CI relinquished a clear plastic baggie contained suspected fentanyl.

The CI related that he/she had dealt directly with LINDSEY JR, handing him the official advanced funds and receiving the Fentanyl directly from LINDSEY JR. The CI was again searched; no money, drugs or weapons were found on the CI's person or in the CI's vehicle.

Within the past forty-eight (48) hours, Your Affiant and other Agents/Officers again met with the CI at a pre-determined location. The CI was briefed and searched; no money, drugs, or weapons were found on the CI's person or in the CI's vehicle.

The CI had previously contacted LINDSEY JR. via cellular telephone, at the same number as the previous controlled purchase, to arrange to purchase a quantity of Crack Cocaine and Fentanyl. LINDSEY JR. again agreed to meet the CI at a location in the City of Farrell known to your Affiant. Your Affiant provided the CI with a known amount of official advanced funds (OAF) obtained from the Pennsylvania Office of Attorney General.

Officers/Agents departed the pre-determined location with the CI. The CI was again followed to a location in the City of Farrell where the CI was under constant surveillance. Officers/Agents were also conducting surveillance at LINDSEY JR.'s residence at 814 Edgewood Drive. Officers/Agents observed LINDSEY JR. exit the from door of 814 Edgewood Drive and get into the driver's seat of the Jeep Grand Cherokee utilized in the previous controlled buy. Officers/Agents again followed LINDSEY JR. to the meeting location. LINDSEY JR. did not make any stops or meet with any other individuals while traveling to the meet location. The

CI was then observed briefly meeting with LINDSEY JR.  Following the brief meeting, the CI was then followed directly back to the pre-determined location, never meeting with any other individuals, where the CI relinquished two clear plastic baggies with one containing suspected Crack Cocaine and the other containing suspected Fentanyl.  LINDSEY JR. had later been observed arriving back at 814 Edgewood Drive where he again parked the Jeep Grand Cherokee in front of the residence.

The CI related that he/she had dealt directly with LINDSEY JR. handing him the official advanced funds and receiving the Crack Cocaine and Fentanyl directly from LINDSEY JR.  The CI was again searched; no money, drugs or weapons were found on the CI's person or in the CI's vehicle.  The Crack Cocaine was field tested, which produced a presumptive positive result for Cocaine base.

(Doc. 36-1 at 15-19).

### A.  *Defendant's Position*

Defendant argues that he is entitled to know the identity of the confidential informant ("CI") referenced in Officer Frampton's Affidavit because: "Mr. Lindsey has alleged in his filings that the confidential informant has either supplied false information to law enforcement officers or does not exist or law enforcement officers have attributed false information to a confidential informant," and therefore, Defendant is entitled to cross-examine the CI at a "suppression/*Franks* hearing."  (Doc. 36 at 6, 10, Doc. 38 at 2).

### B.  *The Government's Position*

In response to this argument, the Government posits: "As established above, Mr. Lindsey's claims do not come close to the required substantial preliminary showing under *Franks.* Compelling disclosure of the identity of the informant to assist with a meritless *Franks* motion would, therefore, be contrary to federal law and should not occur."  (Doc. 41 at 24) (citations omitted).

The Government additionally contends: "Mr. Lindsey's motion to compel lacks merit even if it is considered outside of the *Franks* context. As noted above, he is not charged with

either of the controlled buys. The controlled buys, and the informant's involvement in making

them, were probable cause for the search warrant. Under such circumstances, motions to compel

disclosure of the identity of a confidential informant should be, and have been, routinely denied."

(*Id*. at 25) (citations omitted).

> Relatedly, the Government further asserts:

> The prosecution does not currently intend to call the informant as a trial witness. Even if the prosecution did currently intend to call the informant as a trial witness, Mr. Lindsey's pending motion would be a premature attempt to identify a potential witness for a trial that may not ever occur. If a trial is necessary to resolve this case, the prosecution intends to provide the names of its witnesses to the defense before the trial begins. In addition, the prosecution intends to disclose whatever *Brady/Giglio* information that may exist, and that has not already been disclosed, in advance of trial.

(*Id.* at 26).

> C.  *Applicable Law*

In *United States v. Rivera*, 524 F. App'x. 821 (3d Cir. Apr. 26, 2013), as in this case,

pre-trial the defendant:

> filed motions seeking (1) to test, via a *Franks* hearing, the veracity of the affidavit used to obtain the search warrant, (2) to suppress physical evidence and statements, and (3) to compel disclosure of the identities of confidential informants whose information was used to obtain the search warrant. The District Court denied his motions for a *Franks* hearing and for disclosure of the identities of the confidential informants, and, after an evidentiary hearing on the motion to suppress, denied that motion as well.

*Rivera,* 524 F. App'x. at 824 (footnote omitted).

> The defendant appealed the denial of all three motions to the Court of Appeals for the

Third Circuit.

> With request to his denial of the request for a *Franks* hearing, Defendant argued:

> that the District Court abused its discretion when it denied his request for a *Franks* hearing. In seeking that hearing, Rivera claimed that the detective who provided

the search warrant affidavit "should have entertained serious doubts as to the truth" of the information provided by the confidential informants (Supplemental App. at

389), and that the detective would "not be able to produce the informants who are alleged to have provided the information," (*id.* at 390).

*Id.* at 826.

The Court of Appeals for the Third Circuit affirmed the district court's denial of the

request for a *Franks* hearing, reasoning:

In *Franks v. Delaware*, the Supreme Court held that the Fourth Amendment requires an evidentiary hearing to be held at the defendant's request when a "defendant makes a substantial preliminary showing that a false statement ... was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause . . . ." 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). "It is well-established that a substantial showing of the informant's untruthfulness is not sufficient to warrant a *Franks* hearing." *United States v. Brown*, 3 F.3d 673, 677 (3d Cir.1993). "[A] substantial preliminary showing of intentional or reckless falsity on the part of the affiant must be made in order for the defendant to have a right to an evidentiary hearing on the affiant's veracity." *Id*. To make the preliminary showing required for a *Franks* hearing, the defendant must show intentional or reckless falsity on the part of the affiant, *id.,* and "cannot rest on mere conclusory allegations ... but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements of witnesses," *United States v. Yusuf*, 461 F.3d 374, 383 n. 8 (3d Cir.2006).

Rivera has failed to make such a showing. As with his motion to suppress, he simply questions the veracity of the information provided by the confidential informants, and he offers only conclusory allegations as to what the affiant should have believed based on that information. Even if the information provided by the informants was unreliable, Rivera has offered no evidence that the detective who provided the affidavit either knew that the information was not true or recklessly disregarded its falsity. *See Brown,* 3 F.3d at 677 (noting that "it [is] not enough to show simply that the informant may have lied"); *United States v. Perdomo*, 800 F.2d 916, 921 (9th Cir. 1986) (affirming denial of a *Franks* hearing where proof offered reflected only on veracity of informant and not on veracity of affiant). Rivera was therefore not entitled to a *Franks* hearing, and the District Court did not abuse its discretion in denying him one.

*Id.*

The Court of Appeals for the Third Circuit then affirmed the district court's

determination that the defendant was not entitled to disclosure of the identities of two (2)

confidential informants whose information was used to obtain a search warrant:

> "What is usually referred to as the informer's privilege is in reality the
> Government's privilege to withhold from disclosure the identity of persons who
> furnish information of violations of law to officers charged with enforcement of
> that law." *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639
> (1957). "The scope of the privilege is limited by its underlying purpose," *id*. at 60,
> 77 S.Ct. 623, which is "the furtherance and protection of the public interest in
> effective law enforcement," *id*. at 59, 77 S.Ct. 623. The Government may be
> required to disclose an informant's identity when "(1) the [informant's] possible
> testimony was highly relevant; (2) it might have disclosed an entrapment; (3) it
> might have thrown doubt upon the defendant's identity; and (4) the informer was
> the sole participant other than the accused, in the transaction charged." *United
> States v. Jiles*, 658 F.2d 194, 198–99 (3d Cir.1981) (citing *McCray v. Illinois*, 386
> U.S. 300, 310–11, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *Roviaro,* 353 U.S.
> at 63–65, 77 S. Ct. 623). But "[w]here an informant's role was in validating a search,
> disclosure of his identity is not required." *United States v. Bazzano*, 712 F.2d 826,
> 839 (3d Cir.1983) (*en banc*) (citing *McCray*, 386 U.S. at 304, 87 S.Ct. 1056).
>
> In this case, the Government was not required to disclose the identities of the two
> confidential informants. Rivera has not shown that the informants' testimony was
> needed for any of the purposes that we recognized in *Jiles*. He simply asserts that
> it was needed for his defense and speculates that the informant who completed the
> controlled buys would admit that the seller had not been Rivera. "[M]ere
> speculation as to the usefulness of the informant's testimony to the defendant is
> insufficient to justify disclosure of his identity." *Id.* (alteration in original) (internal
> quotation marks omitted). Because the record suggests that the informants' roles
> were limited to validating the search, which is not a sufficient purpose to compel
> disclosure of their identity, *id.*, the District Court did not abuse its discretion when
> it declined to compel the disclosure.

*Rivera*, 524 F. App'x. at 826–27.  *See also U.S. v. Bazzano*, 712 F.2d 826, 839 (3d Cir. 1983)

(citing *McCray v. Illinois*, 386 U.S. 300 (1967)) (explaining: "Where an informant's role was in

validating a search, disclosure of his identity is not required.").

### D.  Discussion

Here, for all of the reasons set forth above, Defendant has not made the requisite

substantial preliminary showing that the CI does not exist or that Officer Frampton knowingly

and intentionally, or with a reckless disregard for the truth, attributed false information to the CI so to be entitled to *Franks* hearing.  Further, as also stated above, assertions with respect to the veracity of a confidential information is not sufficient to warrant a *Franks* hearing.  Therefore, the Court the Court finds that Defendant has not established that he is entitled to the identification of the CI for purposes of a "suppression/*Franks* hearing."

The Court further finds that Defendant has not established that he is entitled to the identification of the CI for purposes of his trial at this time because the Record supports that: (1) the role of the CI was limited to validating the search of Defendant's Residence; (2) the CI's possible testimony is not highly relevant to the crimes with which Defendant is charged, would not disclose an entrapment, and would not throw doubt on Defendant's identity; (3) the CI was not the sole participant other than Defendant in the transaction charged (again, in this case, Defendant has not been charged with a drug transaction in which the CI was involved); and (4) the Government currently is not planning to call the CI as a witness if Defendant proceeds to trial on the charges in the Indictment.

Accordingly, Defendant's Motion to Compel Identity of Confidential Informant is: (1) denied with prejudice as to Defendant's request for the identity of the CI for a "suppression/*Franks* hearing;" and (2) denied without prejudice with respect to Defendant's request for the identity of the CI as part of his trial.

### IV.    DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (DOC. 35) BASED ON OFFICER FRAMPTON'S AFFIDAVIT LACKING PROBABLE CAUSE IS DENIED

Defendant also moves to suppress all evidence seized at Defendant's Residence on March 20, 2025, when law enforcement searched Defendant's Residence pursuant to the search warrant

that was issued based on Officer Frampton's Affidavit, as well as all evidence derived therefrom.

(Doc. 35).

### A. Defendant's Position

Defendant's legal arguments in support of Defendant's Motion to Suppress Evidence are the following:

> a. the evidence was obtained by law enforcement officers pursuant to a search warrant, which the affidavit of probable cause filed in support thereof did not contain sufficient probable cause;
>
> b. the evidence was obtained by law enforcement officers pursuant to a search warrant, which the affidavit of probable cause filed in support thereof contained false, unreliable and/or misleading information and/or did not fully apprise the issuing authority of the true nature of the information contained in the affidavit; and
>
> c. Mr. Lindsey never consented to the search.

(Id. at 1-2).

### B. The Government's Position

In response to Defendant's Motion to Suppress Evidence, the Government first contends that based on the following information set forth in Officer Frampton's Affidavit, "the search warrant affidavit provided the issuing judge with a substantial basis to conclude that there was a fair probability that contraband or evidence of present or past criminal activity was at Mr. Lindsey's residence," and thus, Defendant's Motion to Suppress must be denied:

1. Officer's Frampton "10+ years of experience investigating drug trafficking crimes," and Officer Frampton's explanation that common practices for drug traffickers include storing "their drug inventory, drug related paraphernalia, and drug related records . . . in their residences" as well as "large sums of currency, either the proceeds from drug sales or monies to be used to purchase controlled substances" in their residences;

2. Law enforcement's confirmation that the search location was Defendant's residence; and

3. Information obtained from a CI who was deemed to be reliable based on her/his past involvement in investigations that resulted in the seizure of controlled substances, firearms, and currency, and in prosecutions for criminal activity, and whose information regarding Defendant "was thereafter corroborated by the two controlled buys that were made directly from Mr. Lindsey less than a week prior to the challenged search."  (Doc. 41 at 8-10).

The Government further posits: "The information in the affidavit about the controlled buys was sufficient by itself to establish probable cause to search Mr. Lindsey's residence, separate and apart from what the informant stated regarding Mr. Lindsey's status as a cocaine and fentanyl dealer and his prior possession of those drugs at his residence."  (*Id*. at 10-11) (citations omitted)

The Government also argues that the ultimate determination that Defendant had not sold the CI fentanyl, but instead sold the CI bromazolam, which was not determined until the pills Defendant sold the CI were lab tested, which was well after Officer Frampton sought the search warrant for Defendant's Residence "cannot retroactively diminish the significance of Officer Frampton's reasonably expressed opinion that the pills likely contained a controlled substance/fentanyl."  (*Id*. at 11).

The Government also contends: "As of March 2025, there was at least probable cause to conclude that bromazolam distribution was a violation of federal analogue law – 21 U.S.C. § 813 – and/or a violation of Pennsylvania state designer drug law – 35 P.S. § 780-113(a)(36)."  (*Id*. at 13).

The Government also asserts that based on Officer Frampton's statements about Defendant dealing crack cocaine, that were confirmed by the March 17, 2025 controlled buy where Defendant sold the CI .6 grams of crack cocaine, Officer Frampton's Affidavit "was

sufficient to produce probable cause for the search warrant as stated in the supporting affidavit."

(Id.).

### C. Applicable Law

In determining whether a search warrant is properly issued, it is well established that:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates,* 462 U.S. 213, 238 (1983) (quoting *Jones v. U.S.*, 362 U.S. 257, 271 (1960)).[3]

Moreover, in *United States v. Stearn*, 597 F.3d 540 (3d Cir. 2010), the Court of Appeals for the Third Circuit explained in detail the task to be undertaken by the district court in determining whether an affidavit provided a sufficient basis for the decision the magistrate judge made to issue a search warrant:

> The role of a reviewing court is not to decide probable cause *de novo*, but to determine whether "the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238, 103 S.Ct. 2317 (citation and quotation omitted). As we explained in *Jones*,
>
> > [O]ur role is not to make our own assessment as to whether probable cause existed. Rather, we are constrained to determine only whether the affidavit provides a sufficient basis for the decision the magistrate judge actually made.
>
> *Jones*, 994 F.2d at 1057. If a substantial basis exists to support the magistrate's probable cause finding, we must uphold that finding even if a "different magistrate judge might have found the affidavit insufficient to support a warrant." *Conley*, 4 F.3d at 1205. Although we do not merely "rubber stamp a magistrate's conclusions," *Whitner*, 219 F.3d at 296 (citation and quotation omitted), we must heed the Supreme Court's direction that "doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Gates*, 462 U.S. at 237 n. 10, 103 S.Ct. 2317 (citation and quotation omitted).

---

[3] The *Jones* decision was overruled by *United States v. Salvucci*, 448 U.S. 83, 85 (1980) only to the extent that in *Salvucci*, the United States Supreme Court held "that defendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated. The automatic standing rule of *Jones v. United States*, *supra*, is therefore overruled."  *Salvucci*, 448 U.S. at 85.

> Probable cause is a "fluid concept" that "turn[s] on the assessment of probabilities in particular factual contexts." *Id.* at 232, 103 S.Ct. 2317. When presented with an application for a search warrant, the magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. 2317. Although every affidavit ideally would contain direct evidence linking the crime with the place to be searched, a magistrate may issue a search warrant even without direct evidence. Probable cause can be, and often is, inferred from "the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [evidence]." *Jones*, 994 F.2d at 1056 (citation and quotation omitted). Because probable cause is a "practical, nontechnical conception," we are concerned with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Gates*, 462 U.S. at 231, 103 S.Ct. 2317 (citation and quotation omitted).

*Stearn*, 597 F.3d at 554. *See also id.* at 555 ("A magistrate may issue a warrant relying primarily or in part upon the statements of a confidential informant, so long as the totality of the circumstances gives rise to probable cause.").

Additionally: "The district courts should focus not on what information an affidavit does not include, but rather on the information it does contain. Considering what the affidavit does state, the district courts should simply ask whether those facts could provide to a magistrate a substantial basis for a fair probability that evidence of wrongdoing will be found." *U.S. v. Conley*, 4 F.3d 1200, 1208 (3d Cir. 1993).

Further, as explained by the Court of Appeals for the Third Circuit in *United States v. Williams*, 974 F.3d 320 (3d Cir. 2020):

> [W]hen (as here) the affidavit refers to information gained from [a] confidential informant[], bare conclusory assertions by the affiant of the reliability and veracity of the informant[] are insufficient. "Mere affirmance of belief or suspicion is not enough." But when "independent police work" substantially corroborates the information of a confidential informant, "an entirely different case" is presented. "[C]orroborat[ion] in significant part by independent police investigation" may provide the requisite substantial basis for a magistrate's finding of probable cause, to which we will defer.

26

*Williams,* 974 F.3d at 351.

Ultimately, then "there must be 'a sufficient nexus between the contraband to be seized

and the place to be searched'." *U.S. v. Torres*, 22-2108, 2023 WL 332758, at *1 (3d Cir. Jan. 20,

2023) (quoting *U.S. v. Golson*, 743 F.3d 44, 54 (3d Cir. 2014)).

Finally, as explained by the district court in *United States v. Landfried*, Crim. No. 19-8,

2020 WL 7047042 (W.D. Pa. Dec. 1, 2020):

> A defendant does not have a presumptive right to an evidentiary hearing on a
> motion to suppress. *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010). A
> "motion to suppress requires an evidentiary hearing only if the motion is
> sufficiently specific, non-conjectural, and detailed to enable the court to conclude
> that (1) the defendant has presented a colorable constitutional claim, and (2) there
> are disputed issues of material fact that will affect the outcome of the motion to
> suppress." *Id.* That's because "the purpose of an evidentiary hearing in the context
> of a suppression motion is to assist the court in ruling upon a defendant's specific
> allegations of unconstitutional conduct—its purpose is not to assist the moving
> party in making discoveries that, once learned, might justify the motion after the
> fact." *Id.* Thus, to justify a hearing, a defendant's suppression motion "must set
> forth and identify for the court specific and concrete issues of fact material to the
> resolution of the defendant's constitutional claim." *Id.* (cleaned up).
>
> Mr. Landfried's primary substantive arguments consist solely of facial challenges
> to the wiretap applications. Whether the applications contained sufficient
> statements of probable cause and necessity, can be resolved by a review of the four
> corners of the documents themselves. *See, e.g.*, *United States v. Dougherty*, No. 19-
> 64, 2020 WL 3574467, at *4 (E.D. Pa. July 1, 2020) ("Because such a facial
> challenge does not create factual questions, an evidentiary hearing would be
> pointless.").

*Landfried*, 2020 WL 7047042, at *3. *See also U.S. v. Munoz*, 164 F.4th 105, 109 (3d Cir. 2026)

(explaining: "[A]n evidentiary hearing resolves factual disputes, not legal ones") (citing *Hines*,

*supra*., *U.S. v. Mitchell-Hunter*, 663 F.3d 45 (1st Cir. 2011)).

### D.  Discussion

The Court first addresses whether an evidentiary hearing is necessary prior to the Court

ruling on Defendant's Motion to Suppress Evidence.

As stated above, Defendant contends that an evidentiary "suppression/*Franks* hearing" is necessary so that Defendant can cross-examine the CI to "expose the false representations attributed to the CI" by Officer Frampton in his Affidavit.  (Doc. 36 at 6, 10).

To the contrary, the Government asserts that an evidentiary hearing is neither necessary nor justified:

> Review of Mr. Lindsey's claim that the affidavit failed to state probable cause to support the search warrant for his residence is limited to the information within the four corners of the affidavit. He has failed to make the "substantial preliminary showing" required to justify a Franks hearing. And his motion to compel the disclosure of the identity of the confidential informant clearly lacks legal merit at this time.

(Doc. 41 at 4).

The Court finds that an evidentiary hearing is not necessary with respect to Defendant's Motion to Suppress Evidence because: (1) for the reasons stated above, the Court has already determined that Defendant is not entitled to a *Franks* hearing with respect to Officer Frampton's Affidavit, and is not entitled to know the identity of the CI in order to call her or him as a witness at a "suppression/*Franks* hearing" or, at this time, for trial preparation purposes; and (2) the Court's determination of whether Officer Frampton's Affidavit provided a substantial basis for the state court Judge to conclude that probable cause existed to search Defendant's Residence for the items listed in the issued search warrant is limited to the "four corners" of the Application for the search warrant.  In other words, there are no disputed issues of material fact that will affect the outcome of Defendant's Motion to Suppress Evidence, and thus, an evidentiary hearing is not necessary in order for the Court to issue a ruling on Defendant's Motion.

Turning next to the merits of Defendant's Motion to Suppress Evidence, the Court finds, for all of the reasons articulated below, that Defendant's Motion to Suppress Evidence, which

seeks to suppress all evidence seized at Defendant's Residence, as well as all evidence derived therefrom, is denied.

Initially, for all of the reasons set forth above as to why Defendant has not shown that he is entitled to a *Franks* hearing with respect to Officer Frampton's Affidavit, the Court finds that because Defendant has not made the requisite substantial preliminary showing that the evidence Defendant seeks to suppress was "obtained by law enforcement officers pursuant to a search warrant, which the affidavit of probable cause filed in support thereof contained false, unreliable and/or misleading information and/or did not fully apprise the issuing authority of the true nature of the information contained in the affidavit," Defendant's Motion to Suppress Evidence is denied to the extent it is premised on this argument.  (Doc. 35 at 2).

Next, the Court disagrees with Defendant's position that his Motion to Suppress Evidence must be granted because Officer Frampton's Affidavit did not provide a substantial basis for the state court Judge to conclude that probable cause existed to search Defendant's Residence for the items listed in the issued search warrant.

To the contrary, the Court finds, based upon the following information contained in Officer Frampton's Affidavit, that given the totality of the circumstances set forth in Officer Frampton's Affidavit, Officer Frampton's Affidavit provided sufficient evidence such that the state court Judge who issued the search warrant at issue had a substantial basis for concluding that probable cause existed that the following evidence of drug trafficking in violation of the Pennsylvania Controlled Substance, Drug, Device and Cosmetics Act, would be found in Defendant's residence: "Crack cocaine and/or Fentanyl and any packaging material for the distribution of controlled substances; U.S. Currency and/or other assets/proceeds of illegal drug sales, including pre-recorded funds; any evidence relating to the utilizing, obtaining, secreting,

transferring, expending and/or concealing of controlled substances or the proceeds therefrom; cellular telephones (and the electronic data stored therein) and any evidence, photographs and/or documents related to the sale(s) of controlled substances; indicia of ownership of the residence, firearms, and ammunition."  (Doc. 36-1 at 1).

Officer Frampton's Affidavit first explained in detail Officer Frampton's extensive law enforcement training and experience, which includes working since 2011 with the Southwest Mercer County Regional Police Department (2011-2013), the City of Hermitage, Pennsylvania (2013-time Affidavit executed) and the Mercer County Drug Task Force ("MCDTF") (majority of tenure with Heritage Police Department).  (Doc. 36-1 at 5-6).

Officer Frampton's Affidavit then detailed Officer Frampton's extensive training with respect to Pennsylvania law, investigative techniques, wiretapping and electronic surveillance, handling K9s, possessing, handling and transporting narcotics, NIK drug field testing kits, properly identifying illegal narcotics, recognizing narcotics, smuggling narcotics, as well as Officer Frampton's completion of the Pennsylvania State Police Class "A" Wiretapping and Electronic Surveillance Training and Certification Program, the DEA K9 Handler Controlled Substance Certificate, and NIK-Drug Field Test Certification Course.  (Id. at 6).

Officer Frampton's Affidavit further explained that Officer Frampton has: (1) assisted in the execution of a number of narcotics search and seize warrants while a law enforcement officer, has assisted with controlled purchases of controlled substances using confidential informants, and has conducted surveillance of drug traffickers; and (2) participated in numerous investigations involving violations of Pennsylvania law such that he "has interacted with users and traffickers of controlled substances; supervised controlled purchases of controlled substances; conducted surveillance of drug traffickers; and served as the affiant on search

warrants and criminal complaints, and "has gained experience relative to the methods used by persons trafficking in, possessing, and using controlled substances, as well as the identification of narcotics and controlled substances." (*Id*. at 7-8).

Office Frampton's Affidavit then explained:

> [I know] that it is common practice for drug traffickers to routinely utilize telephones, mobile phones, prepaid phones, public phones, text messaging, counter surveillance, and coded communications to communicate with their customers, suppliers, couriers, and other conspirators for the purpose of insulating themselves from detention by law enforcement. These individuals often require the use of a telephone facility to negotiate times, places, schemes, and manners for importing, possessing, concealing, distributing controlled substances, and for arranging concealment of proceeds delivered from the sale of controlled substances.

(*Id*. at 8).

Officer Frampton's Affidavit further stated:

> [I am] aware that in a number of residential and vehicle searches executed in connection with drug investigations, in which your affiant and fellow drug agents/officers have been involved, the following kinds of drug-related evidence have typically been recovered:
>
> a)  controlled substances, such as but not limited to Crack Cocaine and Fentanyl;
>
> b)  paraphernalia for packaging, processing, diluting, weighing, and distributing controlled substances such as [specific paraphernalia listed];
>
> c)  Books, records, receipts, notes, ledgers and other papers relating to the distribution of controlled substances;
>
> d)  personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the distribution of controlled substances;
>
> e)  cash, currency, and records relating to controlled substance income and expenditures of money and wealth, for example, [specific examples listed] – this evidence often is located in a safe;
>
> f)  documents indicating travel in interstate and foreign commerce such as [examples listed];

g) Computers, cellular telephones and/or other electronic media utilized for communications and data saving purposes, as well as documents relating thereto;

h) Firearms and other dangerous weapons; and

i) Identification evidence and/or indicia such as [examples listed] which tend to identify the person(s) in residence, occupancy, control, or ownership of the subject premises.

(*Id*. at 8-10).

Officer Frampton's Affidavit then explained in greater detail how and why such evidence of drug trafficking is commonly found in a drug trafficker's residence. (*Id*. at 10-12).

Officer Frampton's Affidavit also explained how drug traffickers will often attempt to "legitimatize" or conceal proceeds from drug sales from law enforcement by placing assets in the names of third parties. (*Id*. at 12).

Officer Frampton's Affidavit further explained that drug traffickers often take, or have taken, photographs "of themselves, their associates, their property, and their product." (*Id.*).

Officer Frampton's Affidavit further explained that drug traffickers often operate under assumed names to conceal their true identities from law enforcement, and "in doing so, acquire property, services, and person identification [documents] under their assumed or alias names," and keep these documents, "together with evidence of their true identities," in their residences. (*Id*. at 13).

Officer Frampton's Affidavit further explained that drug traffickers: (1) "commonly conceal their activities from members of the public by transacting their business in a covert manner by frequently conducting their business during the nighttime hours;" (2) if a large scale trafficker, "often have multiple locations (including residences and/or 'stash houses') from which they operate their illegal activities and in which they maintain evidence of said illegal activities;"

and (3)  if a sophisticated drug trafficker, use computers, cell phones, "and other electronic media utilized for communication and date saving purposes," resulting in evidence of their crimes often being found in such electronic media.  (*Id*.).

Officer Frampton's Affidavit then stated that "[d]ue to the illegal nature of their activities and the high risk of being 'caught' by law enforcement, it is highly unusual for individuals primarily engaged in drug trafficking activities to associate regularly in their businesses or social activities with others not engaged in the same illegal drug trafficking activities."  (*Id.*).

Officer Frampton's Affidavit also explained how law enforcement's investigation of Defendant indicated that Defendant currently resided at 814 Edgewood Drive, Sharon, Pennsylvania ("Defendant's Residence").  (*Id*. at 14).

Officer Frampton's Affidavit additionally explained that the CI, an individual whose identity was known to Officer Frampton and who Officer Frampton stated had "been proven a reliable source" based on the CI's past participation in investigations that resulted in the seizure of drugs, firearms, and currency, and prosecutions, and whose statements had been corroborated through independent law enforcement investigation and surveillance, had provided the following information:

1.  The CI positively identified Defendant when shown a photograph of Defendant.

2.  The CI informed law enforcement that Defendant was a supplier of crack cocaine and fentanyl in the Shenango Valley.

3.  The CI stated that s/he had personally observed Defendant in possession of fentanyl and crack cocaine in Defendant's residence.

  4.  The CI confirmed that s/he had bought drugs from Defendant in the past, in a similar fashion
     to the two (2) controlled purchases law enforcement orchestrated between the CI and
     Defendant.

(*Id*. at 14-16).

     Officer Frampton's Affidavit further set out the details of two (2) controlled buys that took place between the CI and Defendant.  (*Id*. at 15-18).

     Specifically, Officer Frampton's Affidavit explained in detail how the CI made a controlled drug purchase from Defendant during the week of March 16, 2025, on a date known to Officer Frampton.  The controlled drug purchase was initiated by a cell phone call from the CI to Defendant, while the CI was with law enforcement, seeking to purchase fentanyl from Defendant.  Prior to the CI's departure to meet Defendant, both the CI and his vehicle were searched and no drugs or contraband were found.  Law enforcement then conducted surveillance of the controlled drug purchase, observing both the CI and Defendant leave for the controlled purchase (the CI departing from a pre-determined location and Defendant leaving from his Residence in a Jeep known to be used by Defendant and proceeding directly to the meeting locale) and meet briefly in Farrell, Pennsylvania, and then observing the CI return to the pre-determined location.  At this location, the CI met law enforcement, her or his person and vehicle were searched, and the CI "relinquished a clear plastic baggie containing suspected Fentanyl," and reported that s/he had dealt directly with Defendant, handed Defendant the OA funds, and received the suspected fentanyl directly from Defendant.  (*Id*. at 15-17).

     Officer Frampton's Affidavit further explained in detail that the CI made a second controlled drug purchase from Defendant "within the past forty-eight (48) hours" [prior to March 19, 2025]. This controlled drug purchase was initiated by the CI, prior to the CI meeting with law

enforcement, calling Defendant at the same phone number s/he used to call Defendant for the first controlled purchase and requesting to purchase fentanyl and crack cocaine from Defendant. The CI and her or his vehicle were searched prior to her or his departure to meet Defendant with no drugs or contraband being found.  Law enforcement then conducted surveillance of the controlled drug purchase, observing both the CI and Defendant leave for the controlled purchase (the CI departing from a pre-determined location, and Defendant leaving from his Residence in a Jeep known to be used by Defendant and not meeting with anyone else enroute to the meeting site), and briefly meet in Farrell, Pennsylvania, and then observing the CI return to the pre-determined location (not meeting anyone else enroute), where s/he met law enforcement, her or his person and vehicle were searched, and the CI "relinquished two clear plastic baggies with one containing suspected Crack Cocaine and the other containing suspected Fentanyl," and reported that s/he had dealt directly with Defendant, handed Defendant the OA funds, and received the suspected fentanyl and suspected crack cocaine directly from Defendant.  The suspected crack cocaine was field tested and tested presumptively positive for cocaine base. Defendant later was observed returning to his Residence in the Jeep.  (*Id*. at 17-18).

In determining that in light of the totality of the circumstances set forth in Officer Frampton's Affidavit, Officer Frampton's Affidavit provided sufficient evidence such that the state court Judge who issued the search warrant at issue had a substantial basis for concluding that probable cause existed to issue the search warrant for Defendant's Residence, the Court finds that Defendant has not provided any evidence to support his conclusory assertion that the CI lied when s/he stated to law enforcement that Defendant was a supplier of fentanyl and crack cocaine in the Shenango Valley and s/he had seen Defendant in possession of fentanyl and crack cocaine in Defendant's Residence.

To the contrary, as stated earlier with respect to Defendant's request for a *Franks* hearing, given the totality of the circumstances set forth the Officer Frampton's Affidavit, which include that: (1) the CI was known to Officer Frampton and had in the past assisted law enforcement in investigations that led to the seizure of drugs, firearms, and currency, and criminal prosecutions; and (2) the CI's statements about Defendant had been corroborated by law enforcement through their independent investigation and surveillance related to Defendant's drug trafficking activity, including their surveillance of the CI and Defendant during two (2) controlled drug purchases, the veracity and basis of knowledge of the CI were sufficiently set out in Officer Frampton's Affidavit.  Accordingly, the state court Judge had a substantial basis for crediting the CI's statements to law enforcement that: (a) Defendant was a supplier of fentanyl and crack cocaine in the Shenango Valley; (b) the CI had seen Defendant in possession of fentanyl and crack cocaine in Defendant's Residence; and (c) in the past, the CI has purchased drugs from Defendant in a similar fashion to what occurred during the two (2) controlled drug buys, when determining whether there was probable cause to issue the search warrant for Defendant's Residence.  *See U.S. v. Cephas*, 808 F. App'x. 122, 124–25 (3d Cir. 2020) (explaining: "we have always examined the 'totality of the circumstances,' with 'no single factor [being] dispositive or even necessary.' *United States v. Johnson,* 592 F.3d 442, 449 (3d Cir. 2010). Here, on balance, we conclude the tip was reliable. *Cf. United States v. Torres*, 534 F.3d 207, 212 (3d Cir. 2008) (concluding an anonymous tip was reliable because police knew the identity of the informant's employer).").

In holding that Officer Frampton's Affidavit provided a substantial basis for the state court Judge to conclude that probable cause existed to search Defendant's Residence for the items listed in the issued search warrant, the Court also disagrees with Defendant's contention

that the amount of crack cocaine involved in the second controlled purchase was so small that it does not support that there was a fair probability that evidence of Defendant's drug trafficking would be found at Defendant's Residence.  To the contrary, as asserted by the Government ".6 grams of crack cocaine is not an unusually small sale amount."  (Doc. 41 at 14).  *See U.S. v. Brigman*, 350 F.3d 310, 313 (3d Cir. 2003) (footnote and citations omitted) (explaining: "To produce crack cocaine, the powder cocaine is dissolved in a solution of sodium bicarbonate and water, which is then cooked, leaving a solid substance called crack cocaine. "The crack cocaine is broken or cut into 'rocks,' each typically weighing from one-tenth to one-half a gram.").

Finally, contrary to Defendant's contention that Defendant's Motion to Suppress must be granted because Defendant did not consent to the search of Defendant's Residence, the Court finds that because the evidence Defendant seeks to suppress was obtained by law enforcement officers pursuant to a valid search warrant, the lack of Defendant's consent to search Defendant's Residence is not a reason to suppress any evidence seized during the search of Defendant's Residence.

### V.    DEFENDANT'S MOTION TO SUPPRESS IS DENIED BECAUSE THE OFFICERS EXECUTING THE SEARCH OF DEFENDANT'S RESIDENCE DID SO IN OBJECTIVELY REASONABLE RELIANCE ON THE  SEARCH WARRANT'S AUTHORITY

The Government's final argument in response to Defendant's Motion to Suppress Evidence is: "Even if the challenged search warrant was not supported by probable cause stated in the affidavit, the affidavit was not so lacking that the task force officers could not have relied upon it in good faith" and "in Mr. Lindsey's case, the task force officers were not required to be clairvoyant regarding a subsequent lab report on pills they surreptitiously purchased in addition to crack cocaine. As explained above, the officers acted reasonably, and in good faith, in seeking and serving the search warrant in this case."  (Doc. 41 at 14-16).

As succinctly summarized by the Honorable Nicholas J. Ranjan of this Court in *United States v. Griffey*, Crim No. 2:23-CR-66, 2025 WL 755531 (W.D. Pa. Mar. 10, 2025) (J. Ranjan):

> Under *United States v. Leon*, 468 U.S. 897 (1984), "suppression of evidence is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." There are four narrow situations where an officer's reliance on a warrant isn't reasonable: "(1) when the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) when the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function; (3) when the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or (4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized."

*Griffey*, 2025 WL 755531, at *10 (citations omitted). Furthermore:

> Ordinarily, the "mere existence of a warrant . . .  suffices to prove that an officer conducted a search in good faith," and will obviate the need for "any deep inquiry into reasonableness." Indeed, we neither expect nor require police to perform complex legal analysis in the field, for they are untrained in the law and are often called to make "hurried judgment[s]."

*Stearn*, 597 F.3d at 561 (citation omitted).

Defendant's Motion to Suppress and Supporting Brief do not argue either that: (1) the state court Judge "abandoned his . . . judicial role and failed to perform his . . . neutral and detached function"; or (2) the search warrant" was so facially deficient that it failed to particularize the place to be searched or the things to be seized," and there is no evidence to suggest that either of these two (2) exceptions would apply in this case.  Rather, the arguments contained in Defendant's Motion to Suppress and Supporting Brief focus on: (1) the state court Judge issuing the search warrant for Defendant's Residence "in reliance on a deliberately or recklessly false affidavit;" and (2) the search warrant for Defendant's Residence being "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Griffey*, 2025 WL 755531, at *10.

Focusing on Officer Frampton's Affidavit, the Court finds for all of the reasons set forth above, that the totality of the information set forth in Officer Frampton's Affidavit provided a sufficient connection between the criminal activity at issue (drug trafficking) and Defendant's Residence such that the search warrant issued for Defendant's Residence was not "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.*

The Court further finds that, for all of the reasons set forth above, the state court Judge did not issue the search warrant for Defendant's Residence in reliance on a deliberately or recklessly false Affidavit.

Thus, the Court concludes, Defendant's Motion to Suppress Evidence is also denied because the officers executed the search of Defendant's Residence in objectively reasonable reliance on the search warrant for Defendant's Residence's authority.

## VI.    CONCLUSION

For all of the reasons set forth above, it is hereby ORDERED that:

1. Defendant's Motion to Suppress Evidence (Doc. 35) is denied;

2.  Defendant's Motion for *Franks* Hearing (Doc. 37) is denied; and

3. Defendant's Motion to Compel Identity of Confidential Informant (Doc. 38) is denied in part with prejudice and denied in part without prejudice.

An attorneys' only status conference, held via Zoom video conference, will be held on March 5, 2025, at 11:30 A.M.  A separate Order setting this conference will be issued forthwith.

SO ORDERED this 4th day of March, 2026

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:  ECF Counsel of Record